Michelle Yard is here for the appellant. Holly Lynn Gershaw is here for the appellee. And Ms. Yard, you may begin your argument. Good morning. I'm Michelle Yard on behalf of David Ridling. The defense in our line's definition of intended loss requires that the government prove the defendant purposely sought to inflict a specific pecuniary harm on his victim. Despite this substantial mens rea requirement, the district court at Mr. Ridling's sentencing wrongly defined intended loss beginning with page 8 of the sentencing transcript, as in the pre-2015 amendment definition, as did the TSR in footnote 1. The court then wrongly applied a recklessness standard, ceding on page 13 of the sentencing transcript that, quote, when we're talking about intended loss, we're talking about whether there is indifference or reckless disregard for the ability to repay. Well, the government says you invited, if there was an error, you invited it by relying on the Fifth Circuit's decision in the United States v. Morrison. The government did contend that, Your Honor, but Mr. Ridling cited to Morrison for the proposition that whenever there is an intent to repay a fraudulent loan, that there's no intent to repay. Let me use a new phrase. When a defendant intends to repay a fraudulent loan, that doesn't count as an intended loss. So you cited Morrison for a different proposition. Is that your... Your Honor, purposeful intent requires more than recklessness. It requires more than knowledge. So even if there was an awareness by Mr. Ridling that the result here was a practical certainty, it still required proof of more than that. What about the fact that the district court repeatedly referred to a Ponzi scheme? Doesn't that suggest that the court thought your client did not intend to repay the loans? Your Honor, Mr. Ridling objected to the Ponzi scheme classification in this case. The court both called it a Ponzi scheme, but the court also acknowledged that it might have been of business that Mr. Ridling was just seeking fraudulent loans to try and save, which are incompatible, in my view, for that consideration. I mean, Mr. Ridling didn't make any money on this. I outlined the reasons in my brief why I believe that it's inconsistent with a Ponzi scheme. It's clear that the court believed that the conduct, that the fraud, was enough to say that there was this maximum possible loss on the calculation of the fraud. But that's not enough. If that were enough, then just Mr. Ridling having pled to fraud would be sufficient to do this at all total amounts. The Tenth Circuit in Manitou, which is a case that in the 2015 Amendment 792 was expressly adopted, specifically said, and I have the quote here, in Manitou, the quote, a court cannot simply calculate intended loss by totaling up credit limits without any finding that the defendant intended to inflict a loss reasonably approaching those limits. But that's exactly what happened here. The court determined Mr. Ridling's intended loss by charging him with every dollar he even sought. They included $15 million for a loan that he had emailed with a bank about trying to get, but never got. And also, did they not include the piece of property that was returned that was the collateral? Yes. It was recovered by the bank. Yes. So that's another problem here. So at sentencing, Mr. Ridling continued in his objections about, I think it's about $9 million for that property. And the court simply said, well, even if I take off $9 million, you're still above $25,000, so I don't have to decide that here. And that's not what happens. When Amendment 792 was adopted, we're adopting the framework in Manitou. Manitou says that you have to figure out both numbers. You have to do the calculations. You can't skip doing the calculations. You have to figure out the actual loss, you have to figure out the intended loss, and then you take whichever one is more. Well, to that point, though, how would you respond to whether or not this error is harmless? Because we have an actual loss at $10.9 million. We have the court found the intended loss of over $52 million. So you would have to, assuming we're using the intended loss is the higher, how far down, you're going to have to drop that intended loss down like at least $27 million to affect, to get to the next lowest sentencing bracket, right? So why is this not harmless error? It's not harmless error, Your Honor, because if Mr. Ridling intended to pay back that money, whether that was a reasonable belief or not, if he specifically intended, then under the sentencing guideline, that's what matters, that specific intent. So if he intended to pay back all these loans, if he thought that that was going to happen, which the district court acknowledged that he may have believed that at sentencing, then the intended loss can go as low as zero. If he was intending to pay back all the money that he fraudulently got, the intended loss is zero. And that makes sense because for purposes of culpability analysis, right, somebody that takes a loan trying to save their business but believes that they're going to be able to pay it back is less culpable than someone that takes a loan for a purported business and then goes and spends it in Bora Bora or wherever and has no intention on ever trying to make a profit in that business and pay that money back. So it makes sense that if somebody did intend to pay the money back, if somebody was trying to pay the money back, that we would then not consider that intended loss where there is none, but we would then consider the actual loss. So it's not as though the defendant gets a windfall. He's still held accountable in the guidelines for the actual loss, which here under the $10.9 million is a 20-level enhancement for actual loss. So it's not like if we look at actual loss instead of intended loss, he just doesn't get the enhancement at all. He still gets a hefty enhancement. And the quote that I was referencing about the court acknowledging that he may have subjectively intended to repay is on page 40 of the sentencing transcript. The court states, maybe you had hoped that somehow a crop would come in or something else would materialize, and you would make this all go away. Given that this was supposed to be a subjective standard, with the court acknowledging that maybe Mr. Ridley did believe that, we cannot just allow this maximum tabulation of all of the amounts. The court has to make that decision. The court has to decide, does the court believe that he believed that he was going to pay the money back, or did the court not believe that? But the court didn't do that. The court just deferred to this recklessness standard and just said, well, when we're looking at intended loss, we're talking about recklessness or indifference to pay. And that's wrong. But the government concedes that the standard was incorrect. Yes. The combined guideline errors here, the application of the wrong standard, goes then hand-in-hand with the wrong tabulation of the numbers, the wrong calculation. They work hand-in-hand to improperly drive up the guideline range here. It is our contention that the errors were not harmless and require a remand for the district court to properly determine in the first instance what that specific intent was as to the pecuniary loss that Mr. Ridley subjected the banks. If there's no further questions, if I can reserve my time. You may reserve your time. Thank you, Ms. Yard. We'll hear from Ms. Groeschel. Good morning, Your Honors, and may it please the court. When Ridley submitted Morrison to the court and asked it to use it to determine whether he intended to repay the loan or whether actual loss should apply, he was inviting the district court to rely on that case for the legal framework on how to determine if a defendant intended the loss. And that's what the court did here. The knowledge in the beginning of the sentencing calling that if the defendant intended to repay the loss, that actual loss would apply. I'm sort of perplexed by this argument that the government is making to this court because when you read the actual language that was used, this is a citation. When there is evidence of intention to pay the loans, actual loss should be used, not intended loss, United States v. Morrison. That's it. That's the end of the story. That's what it's cited for. There isn't anything else. So I don't understand where this argument is coming from. It's coming from the principle that when you are citing a case to the court for a proposition, in this case it was how to determine if you should apply actual loss or intended loss, and you don't say to the court, you can't, we're only citing it for this purpose. You're saying this case is telling you how to determine if actual or intended loss applies. And Ridling had the opportunity at sentencing when the court said, I'm going to use this language from the Morrison opinion. I think it's correct, although it's not binding on the court. But Morrison is wrong, isn't it? I mean, the language of Morrison conflicts with the guideline, the comment in the guideline. I'm not 100% sure that's correct, Your Honor. At least the Fifth Circuit doesn't seem to. It uses the word purposefully. The pecuniary harm that the defendant purposefully sought to inflict. And that's what intended loss is. What did the court here say about purposefulness? It didn't say anything about purposefulness, Your Honor, and I acknowledge that. But in the Fifth Circuit, the Fifth Circuit, so the 2015 amendment to the guidelines, the purpose of adding the purposely intended standard was to make clear that this was a subjective and not an objective standard. But the Fifth Circuit has always applied a subjective standard for determining intended loss. Yet it also applies this reckless disregard standard for determining if somebody intended loss. So it's at least not plain that these standards are inconsistent. But if you just look at the basic definition of purposeful, it means it has some level of intent. You at least can see that. I agree with that, Your Honor. And I also agree that that would be the case under the former definition of intended loss. So the question is, what does it mean under the guideline for intended loss? And I do recognize that there seems to be a tension between saying that somebody recklessly intended loss. But if you look at this court's case – But the variation and the difference between someone acting recklessly and someone acting with purpose, that's a really big difference. It is a big difference. But when you look at it in the context of determining intended – But here, the government, you concede that he applied the wrong legal standard, that recklessness is not the appropriate standard. I did not mean to concede that, if that's how the brief came across. I think that that is probably the – So are you suggesting now that you're not conceding that point? So I'd like to point the court to the – it's a decision in Smith, which is admittedly an unpublished opinion. But in that case, it said, Even if Smith subjectively hoped that Smith's advertising fortunes would turn around at some point, he nonetheless continued soliciting fraudulent loans through 2012 until Smith's advertising collapsed deep in debt. Smith's own actions therefore contradict and undermine his claim that he intended to repay the victims. And his argument that intended losses were zero is unpersuasive. And that's what we have here, is even if he subjectively hoped to repay the loan, his actions in continuing to take out loan after loan in what is essentially, as Judge Branton acknowledged, the district court characterized as a Ponzi scheme, meaning that there wasn't any legitimate income coming in from which to pay the loan, that the district court here didn't err in determining that he did not intend to repay these loans. And I would like to circle back to just address my argument that plain error review applies here. And the reason that plain error review applies here is because the objection that Ridley made to this DNA enhancement was a factual objection. He objected factually, I did not intend any loss because I intended to repay the loan. He never made a legal objection to the standard that the district court applied in determining if he intended the loss. And he really couldn't have in his initial objections because he didn't know that was a standard that the district court would apply. He also didn't object to the guideline using the pre-2015 DNA. So there was just nothing that would have told the court that this is the wrong standard. Then the district court uses this standard. He doesn't say anything about it at that point. And then at the end of the sentencing hearing, the district court judge asked – He used it to buy farm equipment to keep his farm going. So, I mean, that's consistent with – isn't that consistent with, you know, I need to keep my farm going and so I intend to pay this money back to these banks? That's still not an objection to the legal standard that the district court applied. And when the district court solicits objections at the end of the sentence to the manner it was imposed, Ridley said, I object to the procedural reasonableness of the objection. The district court said procedural objections can be carried. What's your objection specifically? And he said, you didn't sufficiently consider my mitigation arguments. He never said, and you didn't apply the right legal standards. There is nothing that would have informed the district court that this was his objection and that the district court could have then fixed it. So I think that plain error of review is the appropriate standard of review here. And for the reasons that I just discussed about the Fifth Circuit standard and Smith, it's not plain, although it might, I agree, be the better reading that this was the incorrect legal standard. I don't think that it's plain that it is the incorrect legal standard. And to Judge Branch's point earlier, I don't think that the record on plain error review, the burden is on the defendant to show that the result would have been different if the court had applied the correct standard. And I don't think he's met that burden here because the record is really silent with any evidence of what Ridley intended to do with these loans. His lawyer says maybe that he hoped that the cops would come in. Ridley didn't say that. All Ridley said was that he didn't mean for any of this to happen. And the district court actually said he didn't say Ridley hoped that the cops would come in. The district court said maybe he hoped, which to me sounds like he was discounting that, that although he didn't specifically find that Ridley didn't hope it would come in, I think that the district court was saying because he said maybe he hoped that somehow a cop would come in or something else would materialize and you make this all go away. But you were too far in the hole by the time any of that could have come to realization. I think that's pretty close to finding him. I don't believe you actually intended to repay these loans. And since it's on plain error review, the burden is on Ridley to show that this affected his substantial rights. I don't think he has met that burden here. The court has any other questions? I think we have your argument, Ms. Yard. Yes, I do affirm. Thank you. Thank you. Well, now Ms. Gershaw, Ms. Yard makes a pretty strong argument that we should apply plain error review if there's error since there was no objection to the court applying the wrong legal standard. We ought to apply plain error review. What's your response to that? Yes, Your Honor. Mr. Ridley did object in his written PSR objections and then again at sentencing arguing that actual loss was the metric that should be used here because Mr. Ridley intended to repay. You objected to the use of intended loss to determine the offense level. Yes. And that was preserved below, both at the sentencing hearing and in your objections to the PSI. Yes, Your Honor. And when the court summarized the objection at sentencing in page 5 of Doc 106, the court acknowledges that, here's the quote, I did read your objection and the objection essentially said what you've just summarized, which is the objection by yourself was that actual loss should be used and not intended loss because there was an intent by your client to repay the money he was taking from these lines of credit and other bank loans. The objection to using intended loss was clear at the PSR objection. It was clear at sentencing. The court summarized that objection accurately. This is preserved error. In terms of considering Mr. Ridley's intent to repay, there are a lot of things that the court could look at, but I would first point out that it wasn't Mr. Ridley's burden to prove that he did or didn't intend to repay. It was the government's burden to prove what his intent was. The government had to prove that this was purposeful. Well, this is burden shifting to say that Mr. Ridley didn't prove it. No burden was on him because he objected to the use of intended loss. That put the burden squarely on the government. In terms of looking at his intent to repay, he used the money for legitimate purposes. This was not illicit purposes. This was not lavish purchases. There were not personal purchases. He didn't send his children to college on this money. He put it all into the farm, equipment for the farm, insurance for the farm, purchasing land for the farm, additional land for the farm. He lived modestly. The PSR tells us that at the time he was arrested, he was living in a trailer that they valued at $2,500. He was not taking this money and living the high life. He was trying to save his farm and grow his farm so that he could pay this money back. He made payments. He paid back Heritage Bank $3 million in full and Seaside Bank $500,000 in full before he knew that there was any suspicion of fraud. He sought continuously to refinance and consolidate these loans so that he would keep moving forward. He did purchase the insurance. He testified at sentencing that after a hurricane had wiped out one of the crops that that $1.8 million in insurance went to one of the victims. We know, at least in the record, what was forfeited and what was repossessed by the victims, that it was all farm equipment, that it was farm land and farm equipment. There was nothing else that was forfeited as an illicit purchase from this fraudulent money that he obtained. Using the money for the farmland lends credence to his intent to repay, to the idea that what he said, which is that he was trying to grow his business, it would make no sense to object to the fraud, to complete the fraud, and then spend it on farm purchases if that wasn't his intent. He didn't max out the lines of credit. He had on the last bank received a $15 million line of credit, and the actual loss on that is $1.5 million because he didn't take all the money that he could have. He took the money that he needed to try and keep this farm operation going. He always maintained control over repayment, which is an important consideration in the case law. And then on top of all those things, we have his statements that he's a fifth-generation farmer, that that's what he's done his whole life, and that's all he's ever done. The district court began the sentencing by stating the wrong standard and then applied the wrong standard. The court never gave an indication, as the government concedes, that it was even aware of the correct standard, that it was ever even considering purposefulness or intent. By substituting the recklessness standard, the court erred. He erred and affected his guideline range. He received the maximum $53 million, which was every dollar he had ever even requested or asked about borrowing from a bank, and so that error was not harmless because we don't know what the true answer to the purposefulness or intent is. I would ask that this case be remanded to the district court for consideration under the proper standard. Thank you. All right. Thank you, counsel. The case was well argued on both sides. Thank you.